IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

SLATE SECURITY SYSTEMS, INC.,    )
                                  )
                Plaintiff         )
                                  )
        vs.                       )        CASE NO. CV00-HGD-2855-NE
                                  )
ADTEC DETENTION SYSTEMS, LTD.,    )
et al.,                           )
                                  )
                Defendants        )

## MEMORANDUM OPINION

The above-entitled civil action is before the court on Defendant Corrections Products Company, Ltd.'s Motion to Dismiss for Lack of Jurisdiction [Doc. #29], the Motion of Defendants Brooks Wooten and Christian Hunter to Dismiss for Lack of Jurisdiction [Doc. #41], and the Motion of John W. Hunter and Hunter Acquisitions, LLC, to Dismiss for Lack of Jurisdiction [Doc. #52]. The undersigned magistrate judge considers the motions pursuant to 28 U.S.C. § 636(b) and Local Rule 72.1(b)(3)(A).

On September 11, 2000, plaintiff, Slate Security Systems, Inc. (Slate), filed suit against defendant Adtec Detection Systems, Ltd. (Adtec) in the Circuit Court of Morgan County, Alabama. The complaint alleges that Adtec provided Slate with defective hardware used in security doors manufactured by Slate. The complaint further alleges a breach of contract by Adtec. [Exh. A to Doc.

#1, Complaint]. On October 10, 2000, Adtec removed the case to federal court in the Northern District of Alabama based on an alleged diversity of citizenship between the parties. [Doc. #1, Notice of Removal].

In its notice of removal, Adtec avers that plaintiff is a corporation incorporated under the laws of the State of Alabama with its principal place of business in Alabama. It further asserts that Adtec is a limited partnership consisting of Hunter Acquisitions, LLC (Hunter Acquisitions), as the general partner and John W. Hunter (Hunter) as the limited partner. Adtec further asserts that Hunter Acquisitions is, itself, a limited liability corporation under the laws of Texas and maintains its principal place of business in Texas. John W. Hunter is also a citizen of Texas. [Id.].

On the same day that it filed its notice of removal, Adtec filed a motion to dismiss for want of personal jurisdiction and for improper venue and an alternative motion to transfer venue to the Western District of Texas, San Antonio Division. [Doc. #2]. On June 21, 2001, after the submission of briefs and evidence by the parties, the undersigned magistrate judge denied this motion. [Doc. #14]. Thereafter, on July 6, 2001, Adtec filed an answer. [Doc. #16].

Plaintiff filed an amended complaint on October 15, 2001. [Doc. #27]. In the amended complaint, Slate adds Corrections Products Company, Ltd. (CPC), as a defendant. According to Slate, CPC is a Texas limited partnership which was formed to carry on the business of Adtec. It alleges that all functions

2

and operations of Adtec were transferred to CPC; therefore, all the factual allegations and claims against Adtec are lodged against CPC, as successor-in-interest to Adtec.

On December 1, 2001, Adtec filed a counterclaim against Slate, alleging that Slate breached the contract between the parties and caused damages to Adtec in the amount of not less than $129,924.46.

On January 2, 2002, CPC filed a motion to dismiss for lack of jurisdiction. [Doc. #29]. This filing contains the affidavit of Brooks Wooten, who states that he is the vice-president of operations of CPC. He states that CPC is a Texas limited liability corporation of which he and Christian Hunter, both Texas residents, each own 49.5 percent as limited partners and of which Corrections Systems Company, LLC (Corrections Systems), another Texas limited liability corporation, owns one percent as general partner. [Doc. #29, Exh. A, Declaration of Brooks Wooten]. Wooten further states that on or about February 1, 2001, CPC entered into an Asset Purchase Agreement with Adtec wherein CPC acquired certain assets from Adtec for $500,000. However, he asserts that CPC did not acquire the contract between Adtec and Slate. He also states that CPC never contracted with nor had any business dealings with Slate and claims that CPC is not a successor-in-interest to Adtec. [*Id.*]. Based on this, CPC asserts that plaintiff has not established jurisdiction over CPC and moves for CPC to be dismissed as a party defendant.

3

On February 1, 2002, plaintiff filed a second amended complaint.[1]  [Doc. #35].  In addition to Adtec and CPC, plaintiff names Hunter Acquisitions as a defendant, alleging that it is or was the sole general partner of Adtec and that the president of Hunter Acquisitions is John W. "Jack" Hunter.  Plaintiff also adds Corrections Systems, general partner of CPC as referenced above, as a defendant.  Slate asserts that Hunter is the president and the sole member of Corrections Systems.  According to plaintiff, Hunter is or was the sole limited partner of Adtec and owned 99 percent of Adtec.  He is or was also the president of Hunter Acquisitions.

Plaintiff further adds Christian Hunter as a defendant and alleges that he is a resident of Texas and the son of John W. Hunter.  Plaintiff states that Christian Hunter was the president of Adtec[2] and holds a similar position with CPC, of which he owns 49.5 percent.  Finally, plaintiff adds Brooks Wooten as a defendant.  Wooten, also a Texas resident, is the brother-in-law of Christian Hunter and the son-in-law of John W. Hunter.  Wooten was the vice president of manufacturing for Adtec and holds a similar position with CPC, of which he owns 49.5 percent.  Plaintiff further alleges that on or about February 5, 2001, while this action was pending, at the direction of Jack Hunter, Christian Hunter and Wooten, Adtec transferred substantially all of its assets to CPC.

---

[1] Hereinafter, all references to the "complaint" are references to this second amended complaint, unless otherwise noted.

[2] Although it is alleged in the complaint that Christian Hunter was the president of Adtec, Slate later refers to him as a manager rather than president.

4

In the second amended complaint, Slate alleges that it contracted with Adtec to supply certain security hardware to be used in prison projects throughout the United States and being overseen by the United States Bureau of Prisons (USBOP).  According to Slate, some of this hardware was delivered directly to Slate in the State of Alabama.

According to the complaint, the hardware to be used in the projects was required by USBOP to comply with testing standards issued by the American Society of Testing Materials (ASTM).  Slate alleges that Adtec was made expressly aware of the need for its products to meet the ASTM standards and that Adtec assured all parties involved in this undertaking (known as the "Pennington Projects") that its products passed the ASTM standards.

Plaintiff asserts that after the contract was awarded to Adtec, Wooten and Christian Hunter continued to represent to Slate that its products met or would be able to meet these standards.  However, Adtec's sliding door devices, which were to be used on the projects, never passed the ASTM standards and the USBOP would not allow them to be installed.  According to plaintiff, John W. Hunter controlled and directed the testing procedures employed by Adtec during parts of 2000 and that Adtec, John W. Hunter, Christian Hunter, and Wooten deliberately  concealed and misrepresented to Slate the problems Adtec was having meeting the ASTM standards, as well as other material information. As a result, plaintiff alleges that it was forced to terminate all of its contracts  with Adtec on September 5, 2000.

5

In Count I, Slate alleges Adtec breached its contract with Slate by its conduct alleged above.  Count II alleges Adtec made fraudulent material misrepresentations regarding its ability to meet the ASTM standards.  Count III alleges that John Hunter, Christian Hunter, and/or Brooks Wooten, and/or agents acting at their direction made material misrepresentations regarding Adtec's ability to meet the required ASTM standards on the Pennington Projects.

In Count IV, Slate alleges that both prior to and after contracting with Slate on the project, Adtec suppressed its inability to comply with the ASTM standards and the production and delivery schedules on the project.  Count V makes the same claim as Count IV against John W. Hunter, Christian Hunter, and/or Wooten, and/or their agents.  Count VI alleges that John W. Hunter, Christian Hunter, and/or Brooks Wooten conspired to defraud Slate with respect to the award and maintenance of the projects.

In Count VII, Slate alleges that John W. Hunter, Christian Hunter, and/or Brooks Wooten conspired to defraud Slate and Adtec's other existing and potential customers by (1) transferring all or substantially all of the assets of Adtec to CPC; (2) transferring all or substantially all of Adtec's cash to a third party or parties; and (3) upon information and belief, committed other acts in furtherance of the conspiracy which are currently unknown.

In Count VIII, Slate alleges that the transfer, on February 1, 2001, of all or substantially all of Adtec's assets to CPC for $500,000 is a fraudulent conveyance made with the intent to hinder, delay or defraud Adtec's creditors,

6

including Slate.  In Count IX, Slate alleges that, subsequent to the February 1, 2001, transaction between Adtec and CPC, Adtec fraudulently conveyed the $500,000 received from CPC to a third party, believed to be John W. Hunter, with the intent to hinder, delay or defraud Adtec's creditors, including Slate.

In Count X, Slate asserts that it reasonably believed that John W. Hunter was a general partner in Adtec and that the February 1, 2001, transaction was a sham transaction designed to defraud the creditors of Adtec.  It further alleges in Count XI that the principals of Adtec--John W. Hunter, Christian Hunter, and Brooks Wooten--have used CPC to continue  the business of Adtec to the extent that CPC is the alter ego or successor-in-interest to Adtec and is responsible for all the obligations of Adtec.  Count XII alleges that Adtec was wrongfully dissolved as a corporation  and that its dissolution was not in accord with Texas law and that, as a result, any distributions made by Adtec pursuant to its dissolution were wrongful as to Adtec's creditors.

In addition to requesting judgment against John W. Hunter, Christian Hunter and Brooks Wooten, jointly and severally, for breach of  contract, fraudulent misrepresentation, suppression, and conspiracy, plaintiff also requests avoidance of the February 1, 2001, transaction between Adtec and CPC, as well as avoidance of any other fraudulent transfers by Adtec.  It also seeks a declaratory judgment that John W. Hunter participated in the control of Adtec and that Slate reasonably believed him to be a general partner of Adtec to the extent that he is liable for the legal obligations of Adtec.  It further

7

seeks a declaratory judgment that the February 1, 2001, transfer was a sham transaction and requests the imposition of a constructive trust on any assets transferred. [Doc. #35].

## Corrections Products Company, LLC

CPC asserts that it is a Texas limited partnership formed on May 18, 2000. It acknowledges that on February 1, 2001, it purchased the assets of Adtec for $500,000. CPC asserts that its purchase of these assets was an arms-length transaction which occurred entirely in Texas.

According to CPC, because CPC has not contracted with Slate, this court has no "specific jurisdiction" over CPC and that the plaintiff has not alleged facts sufficient to establish personal jurisdiction over CPC in Alabama. It further asserts that an affidavit submitted by Wooten establishes that the few facts alleged against CPC by plaintiff are untrue and that plaintiff has not alleged and cannot prove that CPC has had continuous and systematic contact with Alabama sufficient to cause the Alabama courts to have "general jurisdiction" over CPC.

The affidavit of Brooks Wooten states that he is the vice president of CPC, which was formed on May 18, 2000. He and Christian Hunter, both of whom reside in San Antonio, Texas, each own 49.5 percent as limited partners. The general partner is Corrections Systems Company, LLC, which owns the remaining one percent. Wooten acknowledges the purchase of Adtec's assets by CPC on February 1, 2001, for $500,000. He states that CPC has never

8

contracted with nor had any dealings with Slate and denies that it is a successor-in-interest to Adtec. [Exh. A to Doc. #29].

### Brooks Wooten and Christian Hunter

In their motion to dismiss, Wooten and Christian Hunter assert that they are residents of the State of Texas. They aver that in its second amended complaint, Slate alleges only that Wooten and Christian Hunter concealed and misrepresented information relating to Adtec's products, but it makes no specific allegations that would bring them within the scope of the Alabama long-arm statute. They aver that Slate's allegations are not sufficient to show what activity of Christian Hunter and Wooten would have caused them reasonably to anticipate that they would be sued in Alabama in their individual capacities regarding Adtec's business with plaintiff.

Christian Hunter and Wooten also deny that the purchase of Adtec's assets by CPC is a fraud on Adtec's creditors and further assert that such a determination would have to be made under the laws of Texas since the purchase occurred entirely in Texas. They conclude that Slate's remedy is to litigate its case against Adtec and then, if it prevails, file suit against CPC in Texas to enforce the judgment.

9

## John Hunter and Hunter Acquisitions

John Hunter and Hunter Acquisitions assert that this court does not have jurisdiction over either party. John W. "Jack" Hunter claims that he is an individual who resides in San Antonio, Texas, and that Hunter Acquisitions is a Texas limited liability corporation that maintains its principal place of business in San Antonio. They each claim that neither had any contact with Slate during its business dealings with Adtec.

They further assert that Slate has only generally alleged that John Hunter and Hunter Acquisitions misrepresented and concealed information regarding Adtec's products while employed at Adtec, but Slate makes no specific allegations that would bring either under the Alabama long-arm statute. Hunter alleges that he, neither individually nor as a representative of Hunter Acquisitions, had any knowledge of any relationship or course of business with Slate until after Adtec's business dealings with Slate had ended and when certain collections matters resulted and this litigation occurred.[3] Hunter states that he did not anticipate that his limited involvement in the collection claim against Slate as a representative of Adtec could or would expose him to personal liability or expose Hunter Acquisitions to liability to Slate.

---

[3] As is outlined below, this allegation is contrary to the assertions Slate claims were made by Christian Hunter and Brooks Wooten, as representatives of Adtec during the life of the contract.

## FACTUAL BACKGROUND

When, as here, a court has not conducted a discretionary evidentiary hearing on a motion to dismiss for lack of jurisdiction, the plaintiff must establish a *prima facie* case of personal jurisdiction over a non-resident defendant. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). A *prima facie* case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict. *Id.* The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits. *Id.* Finally, where the plaintiff's complaint and the defendant's affidavits conflict, the district court must construe all reasonable inferences in favor of the plaintiff. *Id.*

The facts giving rise to Slate's cause of action are set out in great detail in its second amended complaint, as noted above. It also has provided various evidentiary submissions which are discussed, in pertinent part, below. As noted above, Slate alleges that it and Adtec entered into a series of contracts in 1999 whereby Adtec was to provide Slate with certain goods and materials for installation in several prison and jail construction projects throughout the country, including Alabama.

According to Slate, in late 1998 and in 1999, Adtec employees contacted Slate soliciting Slate to use Adtec products on its jobs. In response to Slate's concerns about Adtec's performance, these employees, including Christian Hunter (son of John Hunter) and Brooks Wooten (son-in-law of John Hunter),

11

told representatives of Slate that Jack Hunter had infused the company with additional money and was taking a greater role in its affairs. Wooten and Christian Hunter came to Alabama in August 2000 and visited Slate's Hartselle, Alabama, facility in connection with the contracts between Slate and Adtec that serve as the basis of this action. [See Doc. #58, Exh. A, Declaration of Phil Mullins]. Wooten participated extensively in the dealings between Slate and Adtec and also made numerous representations in person, by telephone, and by letter to Slate representatives regarding the status and testing of Adtec products. [See id., Exhs. A & B]. Slate alleges that these representations formed part of Slate's decision to enter into the contracts at issue here.

In addition, during the course of the Slate/Adtec contracts, Slate alleges that it was consistently told by Adtec agents that Jack Hunter was aware of these contracts and the problems that Adtec was encountering in performing its obligations and was taking steps to address them. [Doc. #40, Declaration of Phil Mullins at ¶5]. Several of Adtec's employees, especially Adtec's vice president, Mike Schandel, came to Slate's Alabama offices several times a year to solicit its business and to discuss ongoing projects. One contract that is the basis of this lawsuit is between Adtec and Slate regarding a prison construction project in Clark County, Alabama, for which Adtec delivered allegedly defective products. [Doc. #7, Affidavit of Phil Mullins at ¶¶4-5]. Slate's owner wrote Jack Hunter in July 2000 about Adtec's performance. [Doc. #40, Declaration of Phil Mullins at ¶5]. In August 2000, Slate's owner and Phil Mullins, Slate's

12

Sales and Marketing Manager, visited Adtec's San Antonio facilities and met with Jack Hunter. Hunter told them that Adtec would no longer make further efforts at performing its obligations on its contract with Slate until Slate brought its account current. [*Id.* at ¶7]. Hunter subsequently reaffirmed this statement in a letter and in a telephone call with Slate's owner.

Slate alleges that Adtec's performance on the prison projects was unsatisfactory such that it subsequently was forced to cancel its contracts with Adtec on September 5, 2000. On September 11, 2000, Slate filed the instant suit against Adtec for breach of contract, and Adtec removed the case to federal court on October 10, 2000, based on diversity jurisdiction.

Adtec was a limited partnership. John W. "Jack" Hunter was the sole limited partner and owned 99 percent of the stock of Adtec. Hunter Acquisitions was the general partner, owning the remaining one percent. John Hunter was the sole member and president of Hunter Acquisitions. He also served as president of Adtec. Thus, he had complete legal control of Adtec and Hunter Acquisitions. In addition, it is alleged that his son-in-law, Brooks Wooten, was the vice president of manufacturing for Adtec. Hunter's son, Christian Hunter, was a manager for the company.

On February 1, 2001, while this action was still pending, Adtec sold its assets to CPC in a transaction memorialized by an Asset Purchase Agreement. Paragraph 1.1 of that agreement provides, in pertinent part:

13

> [Adtec] shall sell, transfer, assign and deliver to [CPC], and [CPC] shall purchase and accept from [Adtec], all of the following:
>
> (a) The furniture, fixtures, equipment and other tangible and intangible assets (the "assets"), of [Adtec] listed on Schedule 1.1(a) attached hereto and incorporated herein by reference, all rights under written employment, consulting, confidentiality and non-competition agreements of [Adtec] of any kind or nature whatsoever and all warranties, rights, actions, causes of actions, choses of action, and claims arising out of, resulting from, occasioned by, derived from or otherwise based upon such assets;
>
> (b) All of [Adtec's] good saleable inventory owned by [Adtec] as of the closing date, as hereinafter defined (the "inventory") listed on Schedule 1.1(b) attached hereto and incorporated herein by reference.

[*See* Doc. #30, Exh. A-2].

Paragraph 1.5 of the Asset Purchase Agreement states that CPC does not assume any liabilities, except as explicitly set out. [*Id.*]. Despite the fact that the case at bar was pending at that time, paragraph 4.6 states that "[t]here are no claims, actions, suits, proceedings, inquiries or investigations pending against, or to the knowledge of the Seller threatened against, affecting or relating to the Purchased Assets." [*Id*]. The Asset Purchase Agreement is signed by the seller, Adtec, by Jack Hunter as general partner for Hunter Acquisitions and by the buyer, CPC, by Jack Hunter as general partner of Corrections Systems Company. [*Id.*].

14

Like Adtec, CPC is a limited partnership. Its general partner is Corrections Systems Company, whose sole member and president is Jack Hunter. The two limited partners are Hunter's son, Christian Hunter, and son-in-law, Brooks Wooten. As noted above, both had roles with Adtec. The following table showing the interrelationships of the entities and persons is helpful:

| Company | General Partner | Limited Partner(s) | President | VP-Ops. or Mfg. | Manager-Sales |
|---------|-----------------|--------------------|-----------|-----------------|---------------|
| Adtec Detention Systems, Ltd. | Hunter Acquisitions, LLC (1%) | John Hunter (99%) | John Hunter | Brooks Wooten | Christian Hunter |
| Hunter Acquisitions, LLC | John Hunter | | John Hunter | | |
| Corrections Products Company, Ltd. | Corrections Systems, LLC (1%) | Christian Hunter (49.5%) Brooks Wooten (49.5%) | Christian Hunter | Brooks Wooten | |
| Corrections Systems, LLC | John Hunter | | John Hunter | | |

The registered offices for both Adtec and Hunter Acquisitions is 117 Lilac Lane, San Antonio, Texas 78209. Likewise, the registered office for CPC and Corrections Systems Company is also 117 Lilac Lane, San Antonio, Texas 78209. [Doc. #40, compare Exh. 2, Declaration of W. Patton Hahn, at Exhs. A, B, C, & D].

15

Records submitted reflect that Adtec changed its business address sometime during 2001 to 10700 Sentinel, San Antonio, Texas 78217. [Doc. #40, Exh. 4, Declaration of Ann Redwood, at Exh. A at A-14]. CPC's business address is the same. [See id. at A-18]. Both Adtec and CPC also have the same telephone number. [Id.; compare Declaration of Ann Redwood, at Exh. A at A-14 & A-18].

Slate also has offered evidence that CPC continues to sell the same goods and materials to customers that Adtec formerly sold. [See id.; Declaration of Roger Jagim, Exh. 5, at ¶5 and Exhs. A & B]. Likewise, despite denying any liability for Adtec's liabilities, CPC has agreed to honor certain Adtec contracts with other companies. [See Doc. #40, Exh. 3, Declaration of W. Patton Hahn, at Exhs. E & F; Exh. 3, Declaration of Mike Schap]. It also filed suit against three former Adtec employees to protect trade secrets and proprietary information that CPC claims to have purchased from Adtec on February 1, 2001, the same date as the Asset Purchase Agreement. [Id.at Exh. 2, Declaration of W. Patton Hahn, at Exh. G]. Slate also has offered evidence that other members of the prison construction industry who have dealt with both Adtec and CPC consider them to be one and the same. [See, e.g., Doc. #40, Exh. 5, Declration of Roger Jagim]. According to Slate, Slate is just one of at least five customers of Adtec in the State of Alabama. The other customers include Willow Products in Decatur, Alabama; Cornerstone Detention Products in

16

Decatur, Alabama; U.S. Security Systems in Montgomery, Alabama; and Doug Daily Detention in Birmingham, Alabama.

On December 31, 2001, Adtec filed a "certificate of cancellation" with the Texas Secretary of State, which stated that the partnership was cancelled because "the winding up of the partnership has been completed."  [*Id.* Declaration of Paul Hahn, Exh. B].  Despite the pendency of the litigation, Adtec's records, except for tax-related matters, were destroyed.  [*See* Doc. #48, Motion to Compel, Exh. B, Interrogatory 6].

**DISCUSSION**

The United States Supreme Court has identified two types of personal jurisdiction, specific and general.  *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 411-415 nn. 8 & 9, 104 S.Ct. 1868, 1870-72 nn. 8 & 9, 80 L.Ed2d 404 (1984).  Specific personal jurisdiction arises when the defendant's contacts with the forum are related to the plaintiff's cause of action.  *Williams Elec. Co. v. Honeywell, Inc.*, 854 F.2d 389, 392 (11thCir. 1988) (*per curiam*).

A district court must use a two-part analysis to determine whether it can exercise personal jurisdiction over a non-resident defendant.  *Madara*, 916 F.2d at 1514.  First, a court must determine whether the long-arm statute of the forum state provides for personal jurisdiction over the defendant.  *Id.*  If this prong is satisfied, a court must then determine whether sufficient minimum

17

contacts exist between the non-resident defendant and the forum state to meet the requirements of the Due Process Clause of the Fourteenth Amendment. *Id.*

The Alabama Supreme Court has interpreted Alabama's long-arm statute (Rule 4.2, Ala.R.Civ.P.) to be as "broad as the permissible limits of due process." *Alabama Waterproofing Co., Inc. v. Hanby*, 431 So.2d 141, 145 (Ala. 1983). This satisfies the first prong of this test set out in *Madara*.

According to the Eleventh Circuit, the second prong of the test is satisfied if the plaintiff can show two things: (1) that the defendant had sufficient minimum contacts with the forum state and (2) that "maintenance of the suit [would] not offend traditional notions of fair play and substantial justice." *Madara*, 916 F.2d at 1515-16 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed.2d 95 (1945) (citations omitted)).

To constitute minimum contacts for purposes of specific jurisdiction, the defendant's contacts with the applicable forum must satisfy three criteria. First, the contacts must be related to the plaintiff's cause of action or have given rise to it. Second, the contacts must involve "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum. . . , thus invoking the benefits and protections of its laws." Third, the defendant's contacts with the forum must be "such that [the defendant] should reasonably anticipate being haled into court there." *Francosteel Corp. v. M/V Charm*, 19 F.3d 624, 627 (11th Cir. 1994) (quoting *Vermeulen v. Renault,*

18

*U.S.A., Inc.*, 985 F.2d 1534, 1546 (11th Cir.), *cert. denied*, 508 U.S. 907, 113

S.Ct. 2334, 124 L.Ed.2d 246 (1993)). In addition, "[t]he availability of specific

jurisdiction depends on the relationship among the defendant, the forum, and

the litigation." *Francosteel*, 19 F.3d at 627.

Rule 4.2(a)(2), Ala.R.Civ.P., states, in pertinent part:

> *Sufficient Contacts.* A person has sufficient contacts
> with the state when that person, acting directly or by
> agent, is or may be legally responsible as a
> consequence of that person's
>
> (A) transacting any business in this state;
> (B) contracting to supply services or goods in
> this state;
> (C) causing tortious injury or damage in this
> state by an act or omission in this state . . . . .;
> (D) causing tortious injury or damage in this
> state by an act or omission outside this state if
> the person regularly does or solicits business, or
> engages in any other persistent course of
> conduct or derives substantial revenue from
> goods used  or consumed or services rendered in
> this state;
>
> . . . . .
>
> (I) otherwise having some minimum contacts
> with this state and, under the circumstances, it
> is fair and reasonable to require the person to
> come to this state to defend an action . . . .

Without question, Adtec's contacts with the State of Alabama are related

to plaintiff's cause of action or have given rise to it. By soliciting business and

delivering products in Alabama, Adtec has availed itself of the protections and

benefits of Alabama laws. As this court previously decided, Adtec must

19

reasonably have foreseen that it could be haled into court in Alabama with regard to its contract with Slate.

CPC, Jack Hunter, and Hunter Acquisitions all assert that they have never been in Alabama nor done any business here. However, a defendant's physical presence in the state is not a prerequisite to obtaining jurisdiction over a non-resident defendant. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). *See also, Leventhal v. Harrelson*, 723 So.2d 566, 569 (Ala. 1998); *Shrout v. Thorsen*, 470 So.2d 1222, 1224 (Ala. 1985) (citing *Milliken v. Meyer*, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). So long as the non-resident commercial actor's efforts are purposefully directed toward residents of the forum state, the lack of physical presence does not bar the exercise of personal jurisdiction. *Leventhal*, 723 So.2d at 570 (citing *CompuServe, Inc. v. Patterson,* 89 F.3d 1257 (6th Cir. 1996)).

In addition, where the plaintiff's cause of action is directly related to or arises out of the defendant's contacts with the forum, as in the case *sub judice*, the foreseeability/fair warning requirement

> is satisfied if the defendant has "purposefully directed" his activities at residents of the forum, *Keeton v. Hustler Magazine*, 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984), and the litigation results from alleged injuries that "arise out of or relate to" those activities. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984).

20

*Keelean v. Central Bank of the South*, 544 So.2d 153, 158 ( Ala. 1989) (quoting *Burger King*, 471 U.S. at 472, 105 S.Ct. at 2182), *overruled on other grounds by Professional Ins. Corp. v. Sutherland*, 700 So.2d 347 (Ala. 1997).  Where there are allegations of fraud, as there are here, the Alabama Supreme Court consistently has found that intentional and tortious actions expressly aimed at an Alabama resident will subject the non-resident to suit in Alabama.  *Sudduth v. Howard*, 646 So.2d 664 (Ala. 1994); *Gunaca v. Prime, Inc.*, 717 So.2d 811 (Ala.Civ.App. 1998).

With regard to CPC, construing the evidence in the light most favorable to plaintiff, the evidence reflects that Adtec and CPC have the same principals and management.  All the parties are family members.  Adtec consisted of Hunter Acquisitions (general partner), whose president was John Hunter.  The one limited partner of Adtec was also John Hunter.  Both Hunter's son, Christian Hunter, and son-in-law, Brooks Wooten, held management positions within Adtec, dealt directly with Slate and traveled to Alabama on business related to Adtec's contracts with Slate.

CPC consists of Corrections Systems Corporation (general partner), a company whose president and sole member is John Hunter.  The limited partners of CPC are, again, Hunter's son, Christian Hunter, and his son-in-law, Brooks Wooten.  As with Adtec, both Hunter and Wooten hold management positions with CPC.  John Hunter signed the Asset Purchase Agreement that

21

transferred Adtec's assets to CPC as both the representative of Adtec and the representative of CPC.

CPC manufactures and sells many of the same goods and materials that Adtec did. It has undertaken performance of several of Adtec's contracts and accepted payment that would have gone to Adtec. CPC has entered into litigation to enforce rights which belonged to Adtec, such as a non-compete clause signed by former Adtec employees. Slate also has presented sworn affidavits of customers who have dealt with both Adtec and CPC, who state that they consider them to be one and the same. Furthermore, Adtec and CPC have the same registered office, business address, and phone number.

Plaintiff asserts that jurisdiction over CPC as Adtec's successor-in-interest is proper under Alabama law. The Alabama Supreme Court has recognized the "continuity of enterprise" or "*de facto* merger" doctrine in *Andrews v. John E. Smith's Sons Co.*, 369 So.2d 781 (Ala. 1979). Under the *de facto* merger doctrine, the successor entity is liable for the obligations of the predecessor where, "regardless of the denomination of the transaction by the parties, the acquisition [of the assets of the predecessor by the successor] constitutes a *de facto* merger." *Rivers v. Stihl, Inc.*, 434 So.2d 766, 771 (Ala. 1983). Applying factors as set out in *Turner v. Wean United, Inc.*, 531 So.2d 827, 830 (Ala. 1988),[4] for determining whether a particular business entity is another's

_____

[4] The factors set out by the *Turner* court are:

22

successor-in-interest, Slate argues persuasively that CPC is Adtec's successor-in-interest under Alabama law.

CPC asserts that the law of Texas, and not the law of Alabama, applies in determining the relationship of CPC and Adtec to each other. It bases this argument, in part, on the content of the agreement between Adtec and CPC, which states that the agreement between the two entities shall be construed in accordance with and governed by the laws of Texas. This argument is flawed because that clause only binds the parties to the agreement, CPC and Adtec. Because Slate was not a party to this agreement, it is not bound by this clause.

CPC also argues that, because the transaction between CPC and Adtec occurred in Texas and involved only Texas residents, only Texas law regarding successor liability applies in this case. CPC asserts that Texas has rejected the *de facto* merger doctrine upon which Slate bases its argument. *See Suarez v. Sherman Gin Co.*, 697 S.W.2d 17, 20 (Tex.App. 1985). In *Suarez*, the Texas

_____

> 1) There was basic continuity of the enterprise of the seller corporation, including, apparently, a retention of key personnel, assets, general business operations and even the [seller's] name.
> 2) The seller corporation ceased ordinary business operations, liquidated, and dissolved soon after distribution of consideration received from the buying corporation.
> 3) The purchasing corporation assumed those liabilities and obligations of the seller ordinarily necessary for the continuation of the normal business operations of the seller corporation.
> 4) The purchasing corporation held itself out to the world as the effective continuation of the seller corporation.

531 So.2d at 830.

appellate court noted that article 5.10 of the Texas Business Corporations Act

specifically stated:

> B.  A disposition of all, or substantially all,  of the
> property and assets  of a corporation requiring the
> special authorization of the shareholders of the
> corporation under Section A of this article:
>> (1) is not considered to be a merger or
>> consolidation pursuant to this Act or otherwise;
>> and
>> (2)  Except as otherwise expressly provided by
>> another statute, does not make the acquiring
>> corporation responsible or liable for any liability
>> or obligation of the selling corporation that the
>> acquiring corporation did not expressly assume.

697 S.W.2d at 20.

CPC further argues that, even if Alabama law applies, Slate's attempt to

show *de facto* merger of Adtec and CPC fails because, in *Asher v. KCS*

*International, Inc.*, 659 So.2d 598, 600-01 (Ala. 1995), the Alabama Supreme

Court held that the *de facto* merger doctrine applies only when all of the factors

outlined in *Turner* are present.  CPC argues that not all the *Turner* factors are

present, in that CPC denies it purchased all of Adtec's assets; CPC did not retain

Adtec's name; and CPC asserts that it did not assume Adtec's liabilities and did

not hold itself out as Adtec's successor.

While Slate undoubtably would take issue with some or all of these

assertions, applicable law of either state will yield the same result because of

one factor which CPC has failed to address; that is, Slate's claim and evidence

proffered in support of its claim that Adtec transferred its assets, but not its

24

liabilities, to CPC with the intent to actually hinder, delay, or defraud its

creditors, including Slate. Even assuming Texas law applies, and the doctrine

of *de facto* merger is not applied, the resolution ultimately turns on a Texas

statute not addressed by the parties.

Although the Texas Business Corporations Act specifically rejects *de facto*

mergers in and of themselves, it also states, in pertinent part, as follows:

> §24.005. *Transfers Fraudulent as to Present and Future Creditors*
>
> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; . . .
>
> . . . . .
>
> (b)  In determining  actual intent under subsection (a)(1) of this section, consideration may be given, among other factors, to whether:
>
> (1) the transfer or obligation was to an insider;
>
> (2) the debtor retained possession  or control of the property transferred after the transfer;
>
> . . . . .
>
> (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
>
> (5) the transfer was of substantially all of the debtor's assets;

25

Tex. Bus. & Com. Code Ann. § 24.005 (Vernon 2002).  For transfers made in

such cases, Texas provides certain remedies which include the following:

>          (a)   In an action for relief against a transfer or
>          obligation under this chapter, a creditor, subject to the
>          limitations in Section 24.009 of this code, may obtain:
>
>          (1) avoidance of the transfer or obligation to the extent
>          necessary  to satisfy the creditor's claim;
>          . . . . .; or
>
>          (3) subject  to applicable principles of equity and in
>          accordance with applicable rules of civil procedure:
>          . . . . .
>
>          (C) any other relief the circumstances may require.

Tex. Bus. & Com. Code Ann. § 24.008 (Vernon 2002).

With regard to subsection (C), Texas has held that, upon a finding that

the former owner of liquidated corporations had fraudulently transferred

corporate good will to a new corporation, the trial court could require the new

corporation to pay the entire amount of the debt owed to a defrauded creditor.

*Airflow Houston, Inc. v. Theriot*, 849 S.W.2d 928 (Tex.App. 1993).

Plaintiff has presented evidence which, if believed, reflects that Adtec's

transfer of its assets to CPC is a fraudulent attempt by Adtec to escape liability.

As such, CPC would be liable for Adtec's actions under both Alabama law and

Texas law.  In addition, plaintiff has provided evidence which establishes a

*prima facie* case for piercing the corporate veil of both CPC and Adtec under

26

both Alabama and Texas law. Piercing the corporate veil exposes the individual

shareholder to liability for the torts of the corporation.

Tex. Bus. Corp. Act Ann. art. 2.21(A) states, in pertinent part, that a

shareholder

> shall be liable under no obligation to the corporation or
> to its obliges with respect to . . . any contractual
> obligation of the corporation or any matter relating to
> or arising from the obligation on the basis that the
> holder . . . is or was the alter ego of the corporation, or
> on the basis of actual fraud or constructive fraud, a
> sham to perpetrate a fraud, or similar theory, *unless
> the obligee demonstrates that the holder . . . caused
> the corporation to be used for the purpose of
> perpetrating and did perpetrate an actual fraud* on the
> obligee primarily for the direct personal benefit of the
> holder, owner, subscriber or affiliate.

This is the exclusive means of piercing the corporate veil in Texas. *Kingston

v. Helms*, 2002 WL 31011146 (Tex.App. July 25, 2002) (emphasis added).

Slate has presented a *prima facie* case that John W. Hunter, Christian Hunter,

and Brooks Wooten (and Adtec itself) used CPC for the purpose of perpetrating

a fraud on Slate. By piercing the corporate veil as to CPC, John Hunter,

Christian Hunter, and Wooten would be exposed to liability for tortious acts

attributed to CPC.

As will be discussed below, because there is personal jurisdiction in

Alabama over both Wooten and Christian Hunter, who own 99 percent of CPC,

27

and general jurisdiction over John Hunter, none of which offends notions of due process, there is jurisdiction over CPC.[5]

Even without regard to the liability of the individual stockholders or officers or agents of CPC, CPC itself is alleged to have engaged in conduct with the specific intent to defraud Slate in Alabama regarding its ongoing litigation with Adtec. By knowingly attempting to defraud Slate of assets belonging to Adtec, which was already the subject of litigation in Alabama, CPC reasonably should have foreseen that its interference with ongoing litigation in Alabama would result in its being haled into court in that state. It seems enough to impose jurisdiction in Alabama over CPC when CPC has undertaken allegedly fraudulent activities specifically directed at Slate's ability to obtain relief in Alabama with regard to the Adtec litigation, especially in view of the fact that Adtec has sufficient minimum contacts with Alabama to impose jurisdiction over it, even if CPC does not. In effect, under these unique circumstances, involving claims of fraud, Adtec's minimum contacts are imputed to CPC.

This results in the ultimate conclusion that CPC is both subject to Alabama's long-arm statute and has sufficient minimum contacts to satisfy the Due Process clause of the Fourteenth Amendment to the United States Constitution. At this stage of the proceedings, the evidence, viewed most

---

[5] In the event that, at the summary judgment stage or trial, Slate is ultimately unable to pierce the corporate veil or otherwise demonstrate that this court does, in fact, have jurisdiction over any of these defendants, they may be entitled to have this case dismissed or transferred. However, all that is required at this stage of the proceeding is that Slate make a *prima facie* case establishing jurisdiction, and it has done so.

28

favorably to plaintiff, is sufficient to avoid a motion to dismiss for lack of jurisdiction over CPC.

Alternatively, plaintiff has moved to substitute CPC for Adtec under Rule 25(c), Fed.R.Civ.P. This rule provides:

> (c) Transfer of Interest. In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party. Service of the motion shall be made as provided in subdivision (a) of this rule.

Plaintiff filed a motion requesting the court to make such a substitution earlier in this litigation. It was denied without prejudice at that time. [See Docs. #38 & 46]. The undersigned now will reconsider plaintiff's motion in light of the evidence submitted by it with regard to the various motions to dismiss now under consideration. The court notes that, while CPC objected to the use of the de facto merger doctrine as a basis for joining CPC, its brief was totally silent in response to plaintiff's re-invocation of Rule 25(c).

The transfer of the assets of a corporation that is engaged in litigation and its effect on the lawsuit is governed by state law. Virgo v. Riviera Beach Associates, Ltd., 30 F.3d 1350, 1358 (11th Cir. 1994) (citing Defense Supplies Corp. v. Lawrence Warehouse Co., 336 U.S. 31, 69 S.Ct. 762, 93 L.Ed. 931 (1949)). Under Texas law, upon dissolution of a corporation, all assets of the corporation become property of the stockholder, subject to the rights of

29

*creditors* and statutory powers of the president and directors to settle the affairs of the corporation. *Courseview, Inc. v. Phillips Petroleum Co.*, 312 S.W.2d 197 (Tex. 1958). In such a situation, the trial court may substitute the second corporation for the corporation originally a party where the second purchased the assets of the first *during the pendency of litigation. Virgo*, 30 F.3d at 1358.

Based upon the evidence cited above and considering the evidence in the light most favorable to plaintiff, there is, at this stage in the proceedings, ample evidence from which one could conclude that CPC is Adtec's successor-in-interest. Therefore, for each of the reasons recited above, the motion to dismiss Corrections Products Company, Ltd., for want of personal jurisdiction is **DENIED.** Furthermore, the court's denial of plaintiff's motion to substitute CPC for Adtec as the real party in interest under Rule 25(c) previously entered by this court [Doc. #46] is **VACATED**, and the motion to substitute is **GRANTED.**

With regard to defendants John W. Hunter and Hunter Acquisitions, LLC, Rule 4.2(a), Ala.R.Civ.P., provides, in pertinent part:

> (2) *Sufficient Contacts.* A person has sufficient contacts with the state when that person, acting directly or by agent, is or may be legally responsible as a consequence of that person's
> . . . . .
>
> (D) causing tortious injury or damage in this state by an act or omission outside this state if the person

30

> regularly does or solicits business, or engages in any
> other persistent course of conduct or derives
> substantial revenue from goods used or consumed or
> services rendered in this state;
>
> . . . . .
>
> (l) otherwise having some minimum contacts with this
> state and, under the circumstances, it is fair and
> reasonable to require the person to come to this state
> to defend an action . . . .

As noted above, presence in Alabama is not a prerequisite to personal jurisdiction over a non-resident by Alabama courts. So long as the non-resident commercial actor's efforts are purposefully directed toward residents of the forum state, the lack of physical presence does not bar the exercise of personal jurisdiction. *Leventhal, supra.* In such a situation, a defendant reasonably should have anticipated that he would be sued in the forum state.

Likewise, Hunter is not shielded by claiming that his actions were merely those of an agent for Adtec or Hunter Acquisitions. Where a defendant, even as an agent, engages in a pattern of tortious conduct aimed at Alabama, Alabama courts attain personal jurisdiction over that defendant, even without a defendant's physical presence in Alabama. *Shrout*, 470 So.2d at 1224. Where a party's actions are not merely "untargeted negligence" but intentional and allegedly tortious actions expressly aimed at an Alabama plaintiff, the defendant must "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); *Kulko v. Superior Court*, 436 U.S. 84, 97-98, 98

31

S.Ct. 1690, 1699-1700, 56 L.Ed.2d 132 (1978); *Shaffer v. Heitner*, 433 U.S. 186, 216, 97 S.Ct. 2569, 2586, 53 L.Ed.2d 683 (1977).  Furthermore, the *prima facie* showing of a conspiracy to defraud, shown through the testimony of plaintiff's witnesses, further strengthens the finding of *in personam* jurisdiction by the trial court. *Shrout*, 470 So.2d at 1226.

Slate has alleged that Jack Hunter and Hunter Acquisitions are liable for Adtec's obligations to Slate and that Jack Hunter misrepresented to and suppressed from Slate information regarding Adtec's ability to perform, and existence of problems performing, its contracts with Slate and the ability of Adtec's products to meet clearly defined industry standards. Additionally, Slate has alleged, and provided evidence to support its contention, that once Slate sued Adtec in this litigation, Jack Hunter fraudulently conveyed all of Adtec's assets to CPC to prevent Slate from recovering on any judgment it received in the litigation.  He then dissolved Adtec as a legal entity.  Furthermore, Hunter Acquisitions is liable for any judgment against Adtec by virtue of its status as general partner of Adtec.

Under Texas law, limited partners generally are not liable to third parties for the debts of the limited partnership unless the limited partner participates in the control of the business and the persons who transact business with the limited partnership reasonably believed, based on the limited partner's conduct,

32

that the limited partner is a general partner. Tex. Rev. Civ. Stat. Ann. art. 6132a-1, § 3.03(a).

In this case, Adtec's agents asserted that Jack Hunter was taking a large role in the company's affairs and, when the Slate/Adtec relationship deteriorated in Summer 2000, it was Jack Hunter who made the decision for Adtec to stop performing under its contract with Slate and who communicated this decision to Slate. Hunter also signed the contract on behalf of both Adtec and CPC when the assets were transferred. He was the only limited partner in Adtec and was the sole owner of the general partner, Hunter Acquisitions.

As discussed above, Slate has made a *prima* facie showing that Jack Hunter intentionally moved the assets of Adtec specifically to defraud Slate. Intentional and tortious actions expressly aimed at an Alabama resident will subject the non-resident to suit in Alabama. *Sudduth*, *supra*; *Gunaca*, *supra*. Thus, Adtec's actions are, or may be, found to be the actions of John W. Hunter. Adtec has sufficient contacts to give this court jurisdiction over it this matter. This, combined with the evidence submitted by Slate which provides *prima facie* evidence of fraud by Hunter specifically directed at an Alabama corporation regarding litigation already occurring in Alabama, is sufficient to establish general jurisdiction over him. Under these circumstances, Hunter reasonably should have believed his actions would result in his being haled into court in Alabama.

33

Based upon the evidence cited above and considering the evidence in the light most favorable to plaintiff, there is, at this stage in the proceedings, ample evidence from which one could conclude that Jack Hunter's actions in controlling Adtec are such that he was acting as a general partner rather than a limited partner and is accountable for the liabilities of Adtec.  Furthermore, there is evidence that he personally acted tortuously with regard to Slate by transferring Adtec's assets to CPC in an action intentionally designed to affect the ability of Slate to collect a judgment from Adtec.

With regard to Brooks Wooten and Christian Hunter, it already has been established that they are the son-in-law and son, respectively, of John W. Hunter.  Christian Hunter was a manager of sales for Adtec and is now one of two limited partners in CPC.  Wooten is the other limited partner in CPC and was the vice-president of manufacturing for Adtec.

The evidence proferred by plaintiff reflects that Wooten participated extensively in the dealings between Slate and Adtec.  He had frequent contact and made representations in person, by mail and by phone to Slate employees in Alabama with regard to Adtec's contract with Slate.  Likewise, during the events which culminated in Adtec's refusal to complete the contract with Slate, Jack Hunter wrote Edward Myerson, a member of the law firm representing Slate, and advised him that Adtec was terminating the Slate contacts and that

34

he (Edwards) was to have no contact with anyone at Adtec other than Jack Hunter and Brooks Wooten. [Doc. #58, Exh. B, Letter of September 7, 2000].

Both Christian Hunter and Wooten came to Alabama in August 2000 in connection with the Adtec/Slate contracts, at least one of which had already resulted in the delivery of Adtec products to Alabama. They were both familiar with the problems associated with the completion of these contracts and, despite awareness of the pending lawsuit, both participated in the transfer of all or substantially all of Adtec's assets to CPC, in which they maintained an ownership interest of 99 percent. In addition, a relatively brief time thereafter, Adtec was dissolved and, again, despite the pendency of the litigation, its records, except for tax-related matters, were destroyed. [*See* Doc. #48, Motion to Compel, Exh. B, Interrogatory 6].

Plaintiff has made a *prima facie* showing, outlined above, that both Christian Hunter and Brooks Wooten conducted business in Alabama on behalf of Adtec with regard to the contracts with Slate and engaged in conduct, in conjunction with Jack Hunter, specifically designed to transfer the assets from Adtec to CPC and out of the reach of Slate. They knew, or should have known, that the transfer of all Adtec's assets to CPC would have a direct effect on Slate and the pending litigation with Adtec. In effecting the transfer of assets from Adtec to CPC, it may be said that they were acting as more than mere agents of Adtec. They were involved in allegedly tortious conduct for which they may

35

be held personally liable, along with Adtec.  As was the case with Jack Hunter, where a defendant knows or should have known that his tortious actions will be felt by a citizen of Alabama, Alabama courts properly may exercise personal jurisdiction over that defendant.  *World-Wide Volkswagen*, *supra; Sudduth, supra.*  Construing the evidence in the light most favorable to plaintiff, there is, at this stage in the proceedings, sufficient evidence to conclude that the Alabama courts have personal jurisdiction over Christian Hunter and Brooks Wooten.

Based on the foregoing, it is **ORDERED** that the motion to dismiss of Corrections Products Company, Ltd., [Doc. #29] is due to be and hereby is **DENIED**.  It is further **ORDERED** that the motion to dismiss of Christian Hunter and Brooks Wooten [Doc. #41] is due to be and hereby is **DENIED.**  It is further **ORDERED** that the motion to dismiss of John W. Hunter and Hunter Acquisitions, LLC, [Doc. #52] is due to be and hereby is **DENIED.**

**DONE** this ___5th___ day of November, 2002.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE

36